UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.

RICHARD A. WILSON, ET AL.,

  Defendants,

               /

Case No. 14-13831

Honorable Nancy G. Edmunds

**ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER [37] GRANTING IN PART DEFENDANT'S MOTION FOR PROTECTIVE ORDER [29]**

  This matter comes before the Court on Defendant/Counter-Claimant Carrie Wilson's objection to magistrate's report and recommendation[1] [38] and Plaintiff/Counterclaim Defendant's Objection to the magistrate judge's ruling and issuance of a protective order [39]. The magistrate judge's September 24, 2015 order grants in part Defendant Carrie Wilson's motion for protective order.  (Dkt. nos. 37, 38, 39). Being fully advised in the premises, having read the pleadings, and for the reasons set forth below, the Court AFFIRMS the magistrate judge's order.  (Dkt. no. 37).

  When a non-dispositive motion is referred to and decided by a magistrate judge, a party may serve and file objections to the order within 14 days. Fed. R. Civ. P. 72(a); LR 72.1(d). The district judge to whom the case is assigned "must consider timely objections

---

 [1]The magistrate judge entered an order on a non-dispositive pretrial matter pursuant to Fed. R. Civ. P. 72(a). Despite the Defendant Carrie Wilson's caption to the contrary, the magistrate judge did not enter a Report and Recommendation on a dispositive claim pursuant to Fed. R. Civ. P. 72(b).

and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).

The proceedings before the magistrate judge are incorporated by reference in the magistrate judge's order, which states "For the reasons and under the terms stated on the record . . . ." (Dkt. no. 37). Plaintiff provided a copy of the transcript of the September 24, 2105 hearing on that matter for the Court's review. (Dkt. no. 39-1.) As set forth in Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Neither party shows how the magistrate judge's determination was clearly erroneous or contrary to law. The Federal Rules of Civil Procedure and case law show that the court may limit discovery. *See, e.g.,* Fed. R. Civ. P. 26(b)(1) ("*Unless otherwise limited by court order*, the scope of discovery is as follows . . . ." (emphasis added)); *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993) ("[I]t is well established that the scope of discovery is within the sound discretion of the trial court.") (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981)); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad" and "[t]he scope of discovery is, of course, within the broad discretion of the trial court") (citations omitted).

In response to Plaintiff's subpoena dated July 31, 2015, to PNC Bank, N.A., Defendant Carrie Wilson filed a motion for protective order on August 11, 2015. (Dkt. no. 29.) The subpoena sought the following:

> For all accounts held by Richard A. Wilson and Carrie L. Wilson, individually or jointly, as well as any account in the name of any entity over which either of them had signature authority, including but not limited to checking account no. [ . . . ], for all periods from January 1, 2002 until present, please produce copies of all:
>
> 1. Monthly statements.
>
> 2. Deposit slips and deposited items, front and back that are over one thousand dollars ($1000).
>
> 3. Signature cards.
>
> 4. Cancelled checks, including cashier's checks, bank checks, money orders, or similar drafts, copies of the front and back of said instrument as returned to the bank showing the information regarding its deposit or other disposition at another institution.
>
> 5. Documents related to wire transfers into or out of the account.
>
> 6. Documents related to account closing transactions.

(Def.'s Mot. Protective Ord., Ex. A, Dkt. 29.)

Defendant Ms. Wilson argued in her motion that she "object[s] to the production of any documents relating to any account in her individual name or in the name of any entity over which she has signature authority," arguing that they are "neither relevant nor reasonably calculated to lead to the discovery of relevant evidence," and the "documents will contain a great deal of personal information that simply has nothing whatsoever to do with the present case." (Def.'s Mot. Protective Ord. ¶ 2.) She stated in her motion that she does "not object to the production of documents from any account in the name of Richard

3

A. Wilson and/or any accounts which she holds or has held jointly with Richard A. Wilson." (Def.'s Mot. Protective Ord. ¶ 2.)

Following a hearing on the matter, the magistrate judge issued the following order:

> The government's subpoena to PNC Bank, NA, shall be narrowed as to any accounts in her individual name or in the name of any entity over which she has signature authority, such that the bank will be directed to provide only information as to deposits made to those account (sic).
>
> In all other respects, Ms. Wilson's motion is GRANTED.

(Ord., dkt. no. 37.) As indicated in the pleadings and the hearing transcript, there were no objections to the joint account(s) with Richard Wilson, or "to information from accounts that are joined with Richard Wilson." (Hr'g Tr. 5:21-22, 12:4-5, Sept. 24, 2015.) Further, with respect to relevance, at the hearing the magistrate indicated that he "agree[s] with Ms. Wilson that there might be some relevance to the deposit information." (Hr'g Tr. 13:15-18, Sept. 24, 2015.)

Hearing testimony confirmed that the subpoena seeks records going back 13 years, and the tax assessments and liability go back to the "[e]nd of the late '90s." (Hr'g Tr. 11:9-10, Sept. 24, 2015.)

At the hearing, Defendant Carrie Wilson's attorney noted that "as to the Carrie Wilson individual account, if counsel wanted to secure the deposit information to show where that money came from that Carrie Wilson used to improve these properties, that (sic) that's something that I could understand may be relevant." (Hr'g Tr. 6:14-18, Sept. 24, 2015.)

### a. Defendant Carrie Wilson's Objections to Magistrate Judge's Order

Ms. Wilson objects that the magistrate judge's order is contrary to law because it allows discovery of information that is not relevant, nor reasonably calculated to lead to

4

relevant evidence and seeks information that is personal and confidential "particularly where the government claims no personal liability of or right to recover from Carrie Wilson." (Carrie Wilson's Objections, Statement of Issues Presented, Oct. 8, 2015.)

The magistrate judge did not err in finding that the deposit information for both Ms. Wilson's individual accounts and those entities over which she has signatory authority is relevant and/or reasonably calculated to lead to relevant evidence. Ms. Wilson's counterclaim in this matter is based on an argument that she has an equitable interest in the two real properties at interest in this matter. The government alleges that these two properties are titled in the name of nominee or sham partnerships. Ms. Wilson argues that she has paid expenses on these properties. The magistrate judge identified the relevance of the account information when he stated at the hearing that "one of the things you're looking for is to possibly see if Richard Wilson is essentially funneling money through these accounts in order to -- in other words, whether he has de facto control of the property?" (Hr'g Tr. 8:14-17.) The government also pointed out at the hearing that despite Ms. Wilson having provided cancelled checks to show that she has paid various expenses, the government wants the "bank's records to show that these expenses were paid." (Hr'g Tr. 10:6-10.) The government stated that "[U]ltimately, the government might pursue a case -- might say that even if this money was her money alone, these are gifts to the marriage that she made, knowing that the government had liens against these properties." (Hr'g Tr. 10:13-16.) The government argues that it "already had in its possession the front side of two checks purportedly drawn on a joint account at the same bank in the names of Richard Wilson and Carrie Wilson that were made payable to Carrie Wilson with memo lines that

read "Bills" and "House Hold [sic] Bills." (Pl. and Counterclaim Def.'s Resp. to Objection, Oct. 22, 2015, dkt. no. 40.)

With respect to Ms. Wilson's general objection that the information is personal and confidential, she has not otherwise identified the magistrate judge's error in this regard. The deposit information for the accounts excepted in the magistrate judge's order is relevant and is not privileged. *See generally* Fed. R. Civ. P. 26(b); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 10572229 *2 (E.D. Mich. Aug. 13, 2013) (citing *U.S. v. Miller*, 425 U.S. 435, 442-43 (1976) (perceiving "no legitimate 'expectation of privacy'" in the contents of original checks and deposit slips, noting that "checks are not confidential communications but negotiable instruments to be used in commercial transactions" and "financial statements and deposit slips[] contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business."). For the reasons set forth herein, the Court denies Defendant/Counter Plaintiff Carrie Wilson's objections to the magistrate judge's order.

### b. Plaintiff Government's Objections to Magistrate Judge's Order

The government also objects that Carrie Wilson lacks standing to object to the subpoena as overly broad under Fed. R. Civ. P. 45(d)(3) since she "has not asserted a recognized privilege in the bank's records, nor can she claim an undue burden where the bank is responsible for producing the documents and the bank has not sought to modify the subpoena" and she "has not demonstrated standing to object to discovery of accounts held in the name of any entity for which she has signatory authority." (Pl. and Countercl. Def.'s Resp. to Objection 3, dkt. no. 40.) The parties filed a Joint List of Unresolved Issues on September 22, 2015, with respect to the upcoming hearing on this matter. Standing was

not identified by Plaintiff as one of the two remaining unresolved issues, and, consistent with this statement, it was not raised at the hearing. (Joint List of Unresolved Issues, dkt. 36; Hr'g Tr. Sept. 24, 2015, dkt. no. 39-1.) In this circumstance, the Court declines to address the argument. *See generally Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778 (E.D.N.C. 2011) (declining to address a request that was not first presented to the magistrate judge); *Johnson v. Comm'r of Soc. Sec.*, 2015 WL 5093321 (E.D. Mich. Aug. 28, 2015) (citing *Stonecrest Partners, LLC).*

The government has asked for clarification as to whether it "may seek more than deposit information from accounts in the name of entities over which the defendant Richard Wilson also has signatory authority." (Pl.'s Objections 2 n.1.) The magistrate judge's order does not limit production related to accounts held in Mr. Wilson's name (jointly or singly) or those over which Mr. Wilson has signatory authority. Mr. Wilson's accounts were not the subject of Defendant Carrie Wilson's motion for protective order[2] and at the hearing Defendants stated that they had no objection to those accounts. Nor are accounts held by Richard Wilson (jointly or singly, with or without Carrie Wilson as a signatory) limited by the plain language of the magistrate judge's September 24, 2015 order or the related terms stated on the record at the September 24, 2015 hearing. The magistrate judge's order provides that the subpoena "shall be narrowed as to any accounts in her individual name or in the name of any entity over which she has signature authority, . . . ." (Order Sept. 24, 2015.)

---

[2] "Carrie Wilson does not object to the production of documents from any account in the name of Richard A. Wilson and/or any accounts which she holds or has held jointly with Richard A. Wilson." (Mot. of Carrie Wilson for Protective Order 1, Aug. 11, 2015, dkt. 29.)

The government objects that the two cases cited by the magistrate judge are inapposite to the issue at bar. While this Court agrees that both *U.S. v. Gammo*, 428 F. Supp. 2d 705 (E.D. Mich. 2006), and *U.S. Theodore*, 479 F.2d 749 (4th Cir. 1973), are distinguishable for the reasons set forth by the government, including that the broad subpoenas sought discovery of information related to non-parties for whom the government did not have a current reason to suspect would lead to relevant evidence (*Gammo*) and seeking files on as yet unidentified non-parties (*Theodore*), the magistrate judge's decision was not clearly erroneous or contrary to law.

The government relies on *Griffith v. United States*, 2007 WL 1222586 (S.D.N.Y. Apr. 25, 2007), in which the defendant United States filed a notice of tax lien against property owned by a trust and the government sought to establish the plaintiff's husband Mr. Griffith's equitable ownership of the trust. The plaintiff brought the action to quiet title to real property to which the trust held title. The government issued a subpoena to non-party American Express ("Amex") seeking production of account statements, billing statements, and similar records that relates to Mr. Griffith's credit card accounts with Amex and the court denied Mr. Griffith's motion to quash the same. *Id.* at *1. The court concluded that despite Mr. Griffith's assertion that the subpoena violates his privacy rights, "the Government's interest in the Amex account records outweighs Mr. Griffith's privacy rights." *Id.* at *4. *Griffith* is not unlike the case at bar in that Mr. Griffith was the liable taxpayer, the government was seeking to establish Mr. Griffith's equitable ownership of a trust in his wife's name and the *Griffith* court did not impose limitations on the government's subpoena. Here, the magistrate judge's order does not limit discovery as to Defendant Richard Wilson's account information. To the extent that it limits production of documents related

8

to Carrie Wilson's accounts, the magistrate judge's decision was not clearly erroneous. The Court also notes that the government has not shown how or what additional information related to Carrie Wilson's accounts, aside from the deposits, is relevant.

The Court finds that the magistrate judge's September 24, 2015 order was neither clearly erroneous nor contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Defendants' Objections are thus REJECTED, and the Magistrate Judge's September 24, 2015 order [37] is AFFIRMED.

SO ORDERED.

                s/ Nancy G. Edmunds
                Nancy G. Edmunds
                United States District Judge

Dated: January 22, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 22, 2016, by electronic and/or ordinary mail.

                s/ Carol J Bethel
                Case Manager

2:14-cv-13831-NGE-RSW   Doc # 54   Filed 01/23/16   Pg 10 of 10   Pg ID 1556